1
2
3
4
5
6
7

Niria M. Arvizu, Esq., [SBN 236994]
arvizu@ipcounsel.us
301 E. Colorado, Blvd., Suite 705
Pasadena, CA 91101
Telephone No.: 626.831.8077

Attorneys for Plaintiff,
Wonderfold Corporation

8
9
10
11

UNITED STATES DISTRICT COURT

**CENTRAL DISTRICT OF CALIFORNIA**

12
13
14
15
16
17
18
19
20
21
22
23
24

| | |
|---|---|
| WONDERFOLD CORPORATION, a California Corporation.<br><br>              Plaintiff,<br><br>      vs.<br><br>Dongguan Jibaobao Internet Technology Co., Ltd., a China corporation, and DOES 1-5 inclusive,<br><br>              Defendants. | Case No.: 2:25-CV-11079<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>JURY TRIAL DEMANDED |

25
26
27
28

Plaintiff, Wonderfold Corporation, (hereinafter "Wonderfold") for its Complaint against Defendant, Dongguan Jibaobao Internet Technology Co., Ltd., ("Dongguan Jibaobao"), a China Corporation, states and alleges the following:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., and the common law of trademark infringement, misappropriation, and unfair competition.

2.     Defendant has infringed and continues to infringe, and has induced and continues to induce infringement of, one or more claims of Plaintiff's U.S. Patent No. 10,464,588 ("the '588 patent")U.S. Patent No. D955,301 ("the '301 patent"), and the protected design elements of the stroller of Wonderfold, at least by importing, selling and offering to sell the Cochildor stroller.

3.     Wonderfold is the exclusive licensee and assignee of all rights to all causes of action and remedies arising under the '588 patent and '301 patent, and the owner of the trademark design of the stroller of Wonderfold in the United States, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks injunctive relief and monetary remedies.

## JURISDICTION AND VENUE

4.     This is a civil action for patent infringement arising under patent laws of the United States, 35 U.S.C. § 1 *et seq.,* and for trademark infringement arising under the Lanham Act, 15 U.S.C. §1125(a) and unfair competition.

5.     This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331, 1332 and 1338(a) and 15 U.S.C. § 1125(a) because this action arises under the trademark and patent laws of the United States, there is a diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

6.     Defendant is subject to this Court's personal jurisdiction for one or more of the following reasons:

a.    Defendant has infringed the '588 patent, the '301 patent, and the trademark in this District by, among other things, engaging in infringing conduct within and directed at or from this District. For example, Defendant has purposefully availed and voluntarily placed the Cochildor stroller into the stream of commerce with the expectation that these infringing products will be used in this District.

b.    Defendant has done and continues to do business in the State of California and with one or more residents of the State of California, including in this District;

c.    Defendant directs into the State of California, including in this District, commerce, good and services, and advertising, including by mail, electronic communications and other means;

d.    Defendant has entered into contracts with one or more residents of the State of California to supply products or services within the State of California, including in this District;

e.    Defendant has offered and continues to offer, products constituting patent and trademark infringement and services relating to this complaint in the State of California including in this District;

f.    Defendant has made substantial sales and shipments of infringing goods within the State of California, including in this District;

g.    These infringing products have been and continue to be sold and used in this District;

h.    Defendant maintains refund services, such as those referenced at its website, https://cochildor.com/policies/refund-policy, on infringing products within the State of California, including in this District;

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Defendant has committed acts of infringement in

this District, because Defendant has transacted and continues to transact business within this District, has sold and continues to offer for sale services and products within this district which are a substantial part of the events giving rise to this action. In addition, venue is proper because Defendant offers refund services within this District, and Wonderfold has suffered and is suffering harm in this District.

## THE PARTIES

8.      Wonderfold is a corporation organized and existing under the laws of the State of California with its principal place of business at 5796 Martin Road, Irwindale, California 91706 and is in the business of marketing and selling strollers.

9.      Upon information and belief, Dongguan Jibaobao Internet Technology Co., Ltd., is a corporation organized and existing under the laws of China with a principal place of business at Room 102, No. 10 Changhong Road, Ludong, Humen Town, Dongguan, Guangdong, China 523899 and is in the business of researching, designing, developing, manufacturing, marketing, and selling baby accessories, children's toys, furniture and strollers at low prices, accessories, and components of those products and accessories for importation into the United States, and with sales in the United States, including in this District.

10.     Upon information and belief, Defendant directly and or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sell infringing products and services in the United States, including in the Central District of California, and otherwise purposefully directs infringing activities to this district in connection with the Cochildor stroller.

11.     Upon information and belief, Defendant and defendant Does 1-5, have been and are acting in concert, and are otherwise liable jointly, severally or

otherwise for a right to relief related to or arising out of the same transaction, occurrence or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the Cochildor stroller in this District. In addition, this action involves questions of law and fact that are common to all Defendants.

## HISTORY OF THE STROLLER OF WONDERFOLD

12.    Wonderfold is currently and for years has been the leading manufacturer of stroller wagons for children. At least as early as 2019, Wonderfold 2019 has designed, manufactured, marketed and sold innovative stroller to customers that would assist in carrying all the essentials for toddlers and young children, have the safety and function to be able to carry toddlers and young children, have the convenience of being collapsible, foldable, and have an appealing and distinctive three dimensional shaped design came to signify the quality and reputation of Wonderfold strollers early in the company's history; and such use has been continuous and exclusive since at least as early as 2019.

13.    As a pioneer in the creation and innovation of stroller wagons, Wonderfold launched a line of stroller wagons intended for children six months and older. Wonderfold is known for its reliability, ease-of-use, and innovative industrial design. Wonderfold's team has integrated the functionality of a foldable stroller with a three-dimensional shaped design that is appealing and enjoyable for children and caregivers.

14.    Wonderfold is owner of the stylized mark, "Wonderfold" in Class 12 for strollers and related items, U.S. Registration No. 5,977,081, (the "081 Mark") and the word mark, "Wonderfold" in class 12 for strollers and related items and class 20, U.S. Registration No. 5,956,667, (the "667 Mark") (collectively, the "Wonderfold Marks"). A true and correct copy of the '081 Mark is attached hereto

as Exhibit 1. A true and correct copy of the '667 Mark is attached hereto as Exhibit 2.

15.    New Century Products Limited filed for patent protection on its innovations, and currently holds multiple patents in the US, Taiwan, and Japan, relating to baby carriages, a foldable storage bag, and multi-purpose chairs. The '588 patent, granted by the United States Patent and Trademark Office on November 5, 2019, is entitled "Foldable Baby Stroller", an Ex Parte Reexamination Certificate issued on October 22, 2025 and has remained in force since that time and continues to be in force.

16.    On June 21, 2022, United States Design Patent No. D955,301 titled "Stroller" of New Century Products Limited, was duly and legally issued by the United States Patent and Trademark Office. The '301 patent has remained in force since that time and continues to be in force.

17.    Wonderfold is the exclusive licensee of the '588 patent and the '301 patent with all substantial rights in and to the '301 patent, and was assigned all rights to all causes of action and remedies arising under the '301 patent in the United States. A true and correct copy of the '588 patent is attached hereto as Exhibit 3. A true and correct copy of the Ex Parte Reexamination Certificate for the '588 patent is attached hereto as Exhibit 4. A true and correct copy of the '301 patent is attached hereto as Exhibit 5.

18.    The '301 patent covers an ornamental design for a stroller. Wonderfold has practiced the '301 patent in connection with the commercialization with the Wonderfold strollers and services, as shown for example in the side-by-side comparison below:

//
/

| Figure 1 of '301 patent | Cochildor Ad on Temu.com |
|---|---|
|  |  |
| Figure 1 of '301 patent | Cochildor Ad on Cochildor.com |
|  |  |

Image of Cochildor stroller taken from Temu.com at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025. Image of Cochildor stroller taken from Cochildor.com at the following link, https://tinyurl.com/5bb73u74 last accessed on November 16, 2025.

19.    Wonderfold has invested substantial, time, effort and financial resources in developing and promoting its stroller design and stroller of the '588 patent and the '301 patent and has spent over $13 million in extensive promotion alone and in a variety of media throughout the United States, including, but not limited to, product labeling and packaging, brochures, point of purchase display materials, signage, trade magazine advertisements, trade show displays and, on the web, to distinguish its products and services from those offered by others.

20.    The Wonderfold stroller is sold in high-end department stores such as Saks Fifth Avenue, Bloomingdales, and Nordstrom, and where some of which are sold for $1,599.00 and is found in approximately 1,500 retail stores including 100 brick-and-mortar stores such as Macy's, Dick's Sporting Goods, and Sam's Club and over 308,000 units of the Wonderfold stroller were sold thus far.

21.    The Wonderfold stroller has national recognition and was recently ranked the top stroller wagon in article on www.Parents.com. See article at https://www.parents.com/best-stroller-wagons-8645573, last accessed on November 15, 2025.

22.    The designs associated with the strollers of Wonderfold have become an asset of substantial value and a symbol of Wonderfold's quality products, services, and goodwill. The designs associated with the stroller of Wonderfold are inherently distinctive and have acquired secondary meaning through Wonderfold's long-term, widespread, and continuous use of its designs associated with the Wonderfold stroller in commerce.

23.    Strollers manufactured and sold by Wonderfold are specifically designed to provide a unique stroller, distinctive from other strollers. Consumers, retail providers, and others associate the three-dimensional shaped design of the Wonderfold stroller with Wonderfold, as such stroller designs visually set Wonderfold's products and services apart from those of its competitors.

24.    The design of the Wonderfold stroller is well-known and famous. Wonderfold has used the design of the stroller in connection with its advertising and design collaborations with celebrities such as Kim Kardashian and Chrissie Teigen and has enjoyed unsolicited media coverage where celebrities such as Kim Kardashian Khloe Kardashian, Kevin Hart, Chrissie Teigen, and Joe Jonas have been the subject of celebrity news for using the strollers of Wonderfold.

25.    The image below is of a Wonderfold stroller designed in collaboration between Wonderfold and Kim Kardashian and bearing the personal logo of Kim Kardashian:



Print screen taken from article at Buzzfeednews.com, link at https://www.buzzfeednews.com/article/stephaniesoteriou/kim-khloe-kardashian-disneyland-rides-cutting-line and last accessed on October 10, 2025.

27.    See also below image taken from Kylie Jenner's Instagram account of her child in a Wonderfold stroller:



Link                                                                                                        at https://www.instagram.com/p/CoIFMR5JoqE/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=5, last accessed on April 19, 2024. As of April 19, 2024, Kylie Jenner had 400 million followers.

28.    See also Instagram post of Chrissy Teigen in her Wonderfold stroller:



https://www.instagram.com/p/Cw8byO4ybdJ/?hl=en, last accessed on November 15, 2025. As of November 15, 2025, Chrissy Teigen had 40.9 million followers.

29.    Without solicitation, Consumers have dedicated a multitude of internet platforms for the sole discussion of Wonderfold strollers. For example, without the solicitation of Wonderfold:

a.    a mom on Facebook created a group "for people to discuss Wonderfold wagons", at link:

https://www.facebook.com/groups/456820231549640/permalink/1460755311156122/, last accessed on November 15, 2025;

b.    a group was created on Instagram and is described as "Just two Mamas obsessed with all things Wonderfold!" and use the below Wonderfold stroller design icon as their profile photo:



at link: https://www.instagram.com/wonderfoldmamas/, last accessed on November 15, 2025; and

c.    a Facebook group was created to advertise accessories they make for the Wonderfold stroller, at link: https://www.facebook.com/groups/811445196547009/permalink/970360117322182/?mibextid=0FDknk&rdid=6KEr3Q1tuV4npaal, last accessed on November 15, 2025.

30.    A stroller, designed in the shape of a 3D rectangle with panels that raise above the front and back ends of the 3D rectangular shape, side-by-side vertical rectangle-shaped designs on the left and right side of the stroller shape separated and outlined by a thin solid upright rectangle design, two translucent side-by-side panels on the two vertical rectangle-shapes on the left and right side of the stroller, a distinctively-shaped curved canopy, two seats for children appear to float inside the stroller, stroller seats where the seat backs protrude above the rectangle shape and where the seat bottoms are raised above the lower portion of the 3D rectangle shape, a flap with a vertical rectangular shape with

rounded corners on the lower portion of the flap that hangs over the left and right side of the stroller, a design with three panels of vertical rectangles with the outer two vertical rectangles in translucent material and the middle pattern in solid fabric on the lower portion of a removable basket on the back of the stroller, a crescent shaped flap over the front pocket of the stroller, an overhead canopy with distinctive rounded edges, a distinctive three-ridge design on the clips for the child seats for the stroller, a distinctive three-ridge design on the clips for accessories for the stroller, a distinctive shape when the stroller is folded and with the center flap with a distinctive rectangular design positioned to hang over the edge of the uppermost portion of the folded stroller, a distinctive capsule-shape for the padding for the harness for the child seats, a distinctive design containing a multiplicity of interconnecting boat-shapes on the tread of the wheels, two distinctive curves near the insertion point on the folding latch, handlebar button where the outer facing cover for the button is shaped in a distinctive square where the lines of the square curve outward, where the button for the handlebar is on the inside of the handlebar and is rounded and with an indented circle in the center, and where these purely aesthetic, non-functional stroller designs, or a combination thereof are recognized by consumers as the Wonderfold stroller. The first image below showing the child seat for the stroller and the second image below showing the stroller with the child seat installed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




31.     The shapes and lines of the protected design of the Wonderfold stroller are purely aesthetic, not functional, and not essential for the purpose of the stroller, to transport children, and do not affect the quality or, make the stroller of Wonderfold more or less expensive to manufacture or sell. The design of the Wonderfold stroller is not essential to its use or purpose, and there are a multitude of ways in which a child may be transported in a stroller, and which do not require the design of the Wonderfold stroller.

32.     Wonderfold emphasizes and stresses the elements of the design of the stroller. Below are drawings created by Wonderfold for the marketing of the Wonderfold stroller that emphasize the elements of the stroller of Wonderfold:





 

33.     Wonderfold uses the following drawings adjacent to photos of the stroller of Wonderfold in its advertising, as shown below on the main page of its webpage; the drawing circled below in red:



.

See enlarged drawing below:



Screenshots taken from website at https://wonderfold.com/ and last accessed on November 15, 2025.

34.    Below is a screenshot of how retailers use the drawings of Wonderfold the emphasize the elements of the trademark design of the stroller of Wonderfold:



See enlarged drawings below:



Screenshot taken from the Wonderofld store on Amazon.com and may be found at the following link: https://bit.ly/4nX9Yjw last accessed on November 15, 2025.

35.    Third parties have also copied the design of the Wonderfold stroller, see below advertisement of yet another copycat stroller:



36.

The above image taken from Amazon.com and may be found at the following link: https://bit.ly/49mUrGm. Link last accessed on November 15, 2025.

37.    As a result of result of the substantial advertising and promotional efforts of Wonderfold, as well as the high quality of the products and services associated with the stroller design of the '301 patent and Wonderfold's line of strollers, such distinctive stroller design has earned valuable and residual goodwill and reputation for Wonderfold being the sole source for such goods and services in the United States.

## ACTS GIVING RISE TO THE ACTION

38.    In recognition of the commercial success of the stroller of the '588 and '301 patents, and the inherently distinctive design of the Wonderfold line of strollers, at least as early as 2024, Defendant, began marketing and selling a foldable stroller in direct competition with Wonderfold, which copies the patented and distinctive designs of the stroller of Wonderfold, and which Defendant identifies as the Cochildor stroller and also copies the naming convention of Wonderfold by using the term "Elite" followed by the number 2 or 4, as applied to their stroller products. See the screen shot below, where Defendant uses the term "Elite" followed by the number 2 or 4, to describe specific wagon stroller products of Defendant, as shown below:

1



11    The image above is a screenshot from Amazon.com after searching "elite

12  stroller wagon" on Amazon.com, which in the first five results reveals four of the

13  Cochildor stroller wagons mixed in with one Wonderfold stroller wagon and can

14  be found at the following link:

15  https://www.amazon.com/s?k=elite+stroller+wagon&i=baby-

16  products&crid=285B5VJVXJODQ&sprefix=elite+stroller+wagon%2Cbaby-

17  products%2C114&ref=nb_sb_noss, last accessed on October 14, 2025. [The

18  highlight to the term "Elite" added for emphasis.]

19      39.    The following a further example of Defendant's advertising on Temu

20  and in the first review listed describing the Cochildor as "an exact dupe for the

21  wonderfold!" which can be found at : http://bit.ly/3Jvnm0o, last accessed on

22  November 15, 2025.



Below a close-up of the language quoted above:



40.    See also the following similar advertisement on Temu.com for the Cochildor wagon stroller and with two of the rotating banners making reference to the Wonderfold wagon stroller, i.e., "amazing! I wanted to buy a wonderfold but they are so expensi.." and "10/10 better than wonderfold"

1

2

3

4

5

6

7

8

9

10



11

12

A cropped image of the language is shown below:

13

14

"amazing! I wanted a wonderfold but they are so expensi..."    ›

15

16

17

18

19

20

21



22

23

24

25

26

A cropped image of the language is shown below:

27

28

"10/10 better than the Wonderfold!! I'm so obsessed!! Be..."    ›

A link to the advertisement can be found here: https://bit.ly/3LH43lb, last accessed on 11.3.2025.

41.    The sale and advertising of the Cochildor stroller has caused consumer confusion; as shown below, the post shows a photo of the Cochildor stroller and requested assistance for a broken piece; another consumer responded and directed the purchaser to "contact wonderfold":




Above   screenshots   taken   from   facebook.com   at https://www.facebook.com/groups/811445196547009/permalink/140241829411 6360/?rdid=0cwnOBwmpzOM9ytQ#.

42.    Consumers have recognized the design of the wheel tread of the Cochildor is also copied from the Wonderfold. See posting on Facebook below

where one consumer posts an image of the Cochildor stroller along with the comment, "ooo those tires look good too" and another consumer responds, "girl it's almost identical to the WF, if it's not the same it's dang close!":



Image from post above taken from the following link: https://www.facebook.com/groups/811445196547009/?multi_permalinks=1358654965159360&ref=share.

43.    See also the following side by side comparison of the wheels of the Cochildor, and the wheels of the Wonderfold, showing a distinctive design containing a multiplicity of interconnecting boat-shapes on the tread of the wheels, which has acquired secondary meaning through the efforts of Wonderfold:

| Wonderfold tire tread | Cochildor tire tread |



44.     Defendant sells the Cochildor stroller at a fraction of the cost of the Wonderfold stroller, and, include that in their advertising.

50.     Defendant copied the stroller design from the stroller design of the '588 patent and the '301 patent and the distinctive design of Wonderfold's line of strollers.

51.     The stroller design of Defendant's stroller is the same or substantially the same as the stroller design of the '301 patent and Wonderfold's line of strollers. The stroller designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase Defendant's products believing them to be substantially the same as the '301 patent.

52.    In spite of the rights of Wonderfold, Defendant willfuly and knowingly infringed Wonderfold's rights, including as to the '588 patent and the '301 patent.

53.    Defendant copied the stroller of the '588 patent and the stroller design of the '301 patent. A side-by-side comparison of the '301 patented design and the Cochildor stroller are shown below, the photograph of the Cochildor stroller being taken from Temu.com and offering for sale the Cochildor stroller from Temu.com at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:

| Figure 1 of '301 patent | Cochildor Stroller |
| --- | --- |
|  | |

55.    As shown in the photos, the Cochildor stroller has a design that is the same or substantially the same as the '301 design patent. The stroller designs are

so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchase usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase Wonderfold's products believing them to be substantially the same as the stroller design protected by the '301 patent.

56. Wonderfold has not granted any license or any authorization to Defendant to make, use, offer for sale, sell, or import strollers that embody the stroller design patented in the '301 patent and which is proprietary to Wonderfold.

57. In spite of the rights of Wonderfold, Defendant willfully and knowingly infringed the rights of Wonderfold, including as to the '588 patent and the '301 and trademark design of the stroller of Wonderfold. Further, Defendant committed wrongful acts that constitute unfair and deceptive trade practices in relation to the Cochildor stroller and the stroller design and services related to the Cochildor stroller.

58. Wonderfold has been damaged by the foregoing infringing and wrongful acts of Highlink, including, but without limitation, suffering actual damages.

59. By manufacturing and selling the Cochildor strollers with a stroller design that is the same as, or substantially similar to, Wonderfold's unique and distinctive stroller design protected by the '588 patent and the strolled design protected by the '301 patent, Defendant willfully and knowingly caused a likelihood of confusion or misunderstanding as to, *inter alia*, the sponsorship and approval of the Cochildor products and services being offered and sold by Defendant. Such wrongful conduct also caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of the Cochildor products and services with Wonderfold.

60.   Defendant encouraged consumers to believe that the Defendant's products and services were sponsored, approved or sold in affiliation, connection or association with Wonderfold despite knowing of Wonderfold's rights. Defendant's wrongful actions and practices in connection with the Cochildor products and services were deceptive to consumers and others including Wonderfold.

61.   Defendant's wrongful conduct and activities will continue unless enjoined by this Court.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 10,464,588

62.   Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

63.   Defendant has directly infringed and is currently directly infringing the '588 patent my making, using, selling, offering for sale, and/or importing into the United States, without authority, products and equipment that embody one or more claims of the '588 patent, including but not limited to the Cochildor stroller.

64.   As just one non-limiting example, set forth below (with claim language in italics) is a description of infringement of exemplary amended claim 1 of the '588 patent in connection with the Cochildor stroller. This description is based on publicly available information. Wonderfold reserves the right to modify this description, including, for example, on the basis of information about the Cochildor stroller that it obtains during discovery.

*A foldable baby stroller, comprising:* The Cochildor stroller is a combination of the claimed elements, as described below.

1(a) *a front wheel assembly, comprising a front wheel holder, a front-left wheel and a front-right wheel disposed at the bottom of the front wheel holder;* The Cochildor stroller includes a front wheel holder, a left-wheel holder and a

right wheel holder at the bottom of the front-wheel holder as indicated below and using images from the advertisement on Temu.com for the Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:



1    *1(b) a rear wheel assembly, comprising a rear wheel holder, a rear-left*
2    *wheel and a rear-right wheel disposed at the bottom of the rear wheel holder,*
3    *wherein the rear wheel 40 holder is inverted U-shaped, connected to a push rod*
4    *and the push rod extends from a rear side of the rear wheel holder*; The
5    Cochildor stroller includes a rear wheel assembly, comprising a rear wheel
6    holder, a rear-left wheel and a rear-right wheel disposed at the bottom of the rear
7    wheel holder, wherein the rear wheel holder is inverted U-shaped, connected to a
8    push rod and the push rod extends from a rear side of the rear wheel holder as
9    indicated below and using images from the advertisement on Temu.com for the
10    Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed
11    on November 15, 2025*;*



1(c) *a folding assembly, comprising two lateral folding holders disposed at a right side and a rear side thereof respectively, wherein each lateral folding holder comprises an upper-front fence tube, a lower-front fence tube, an upper-back fence tube, a lower-back fence tube and a middle holder;* The Cochildor stroller includes a rear-wheel assembly, made of two lateral folding holders disposed at a right side and a rear side where each lateral folding holder comprises an upper-front, lower-front, and upper-back fence tube, a lower-back fence tube and a middle holder as indicated below and using images from an advertisement for the Cochildor stroller on Temu.com for the Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:



1    (d) *the upper-front fence tube and the upper-back fence tube are disposed in front of and adjacent to the lower-front fence tube and the lower-back fence tube respectively;* The Cochildor stroller has an upper-front fence tube and upper-back fence tube that are disposed of in front of and adjacent to the lower front fence tube and the lower back fence tube respectively as indicated below and using images from an advertisement for the Cochildor stroller on Temu.com for the Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:



1(e) *the middle holder comprises an upper folding joint, a lower folding joint and a support stand rod disposed therebetween and connecting the upper folding joint to the lower folding joint;* The Cochildor stroller's upper middle holder comprises an upper folding joint, a lower folding joint and a support stand rod disposed therebetween and connecting the upper folding joint to the lower folding joint as indicated below and using images from an advertisement for the Cochildor stroller on Temu.com for the Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:



1 (f) *the upper folding joint is disposed in front of and adjacent to the lower folding joint*; The upper folding joint of the Cochildor stroller is disposed in front of and adjacent to the lower folding joint as indicated below and using images from an advertisement for the Cochildor stroller on Temu.com for the Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:



1 (g) *front ends of the upper-front fence tube and the lower-front fence tube are pivotally connected to the front wheel holder respectively, rear ends of the upper-front fence tube and the lower-front fence tube are pivotally connected to front ends of the upper folding joint and the lower folding joint corresponding thereto respectively, the rear ends of the upper-back fence tube and the lower-back fence tube are pivotally connected to the rear wheel holder respectively, and the front ends of the upper-back fence tube and the lower-back fence tube are pivotally connected to the rear ends of the upper folding joint and the lower folding joint corresponding thereto respectively;* The front ends of the upper-front fence tube and the lower-front fence tube of the Cochildor stroller are

pivotally connected to the front-wheel holder respectively, and the rear ends of the upper-front fence tube and the lower-front fence tube are pivotally connected to the front ends of the upper folding joint and the lower folding joint correspondent respectively, and the rear ends of the upper-back fence tube and lower-back fence tube are pivotally connected to the rear-wheel holder respectively, and the front ends of the upper back fence tube and the lower back fence tube are pivotally connected to the rear ends of the upper folding joint and the lower folding joint corresponding thereto respectively of the Cochildor stroller as indicated below and using images from an advertisement for the Cochildor stroller on Temu.com for the Cochildor stroller at the following link https://bit.ly/44eEfDs, and last accessed on November 15, 2025:



1(h) *wherein a cross-sectional view of the upper folding joint is inverted U-shaped and a bottom of the upper folding joint is provided with an upper-end positioning slot;* a cross-sectional view of the upper folding joint of the Cochildor stroller is inverted U-shaped and a bottom of the upper folding joint is provided with an upper positioning slot as indicated below and using images of advertisements of the Cochildor stroller on Temu.com.



1 (i) *and a cross-sectional view of the lower folding joint is U-shaped and a top of the lower folding joint is provided with a lower-end positioning slot*; a cross-sectional view of the upper folding joint of the Cochildor stroller is inverted U-shaped and a bottom of the upper folding joint of the Cochildor stroller is provided with an upper-end positioning slot; as indicated below and using images of advertisements of the Cochildor stroller on Temu.com



1(j) *wherein the lower front fence tube and the lower-back fence tube are each pivotally connected at remote ends thereof to the front wheel holder and the rear wheel holder, respectively, and the lower front fence tube and the lower-back fence tube are each pivotally connected at an intermediate point along their respective lengths to the lower folding joint providing contact between proximal ends of the lower front fence tube and the lower-back fence tube and a base of the lower-end positioning slot;* the lower front fence tube and the lower-back fence tube of the Cochildor stroller are each pivotally connected at remote ends thereof to the front wheel holder and the rear wheel holder, respectively, and the lower front fence tube and the lower-back fence tube are each pivotally connected at point along their respective lengths to the lower folding joint providing contact between proximal ends of the lower front fence tube and the lower-back fence tube and a base of the lower-end positioning slot as indicated below and using images of advertisements of the Cochildor stroller on Temu.com.



65.    At least as early as the filing and service of this Complaint, Defendant is also indirectly infringing the '588 patent.

66.    Defendant has actual knowledge of Wonderfold's rights in the '588 patent and details of Defendant's infringement of the '588 patent based on at least the filing and service of this Complaint.

67.    Defendant's manufacture, use, import, offer for sale, and/or sell the Cochildor stroller with knowledge of or willful blindness to the fact that its actions will induce Defendant's retail partners and end users to infringe the '588 patent by at least using and/or selling the Cochildor stroller in violation of 35 U.S.C. § 271.

68.    Defendant's infringement has caused, and is continuing to cause, damage and irreparable injury to Wonderfold, and Wonderfold will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

69.    Wonderfold is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT 2: INFRINGEMENT OF U.S. PATENT NO. D955,301

65.    Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

66.    Defendant has engaged in a pattern of conduct demonstrating: the objectively high likelihood that Defendant's actions constitute infringement of the '301 patent and that the '301 patent is valid and enforceable; and that this objectively-defined risk was so obvious that Defendant knew or should have known it.

67.    Defendant has infringed and continues to infringe the '301 patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of California and within this District, products infringing the

ornamental design covered by the '301 patent in violation of 35 U.S.C. § 271, including, but not limited to Defendant's Cochildor products.

68.    Defendant infringes the '301 patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser gives, the stroller design of the '301 patent and the stroller design of the strollers of Defendant is substantially similar, the resemblance being such as to deceive such an ordinary observer, inducing him to purchase one supposing it to be the other.

69.    Defendant's acts relating to the '301 patent were undertaken without authority, permission, or license from Wonderfold and such acts violate are in violation of 35 U.S.C. § 271.

70.    Defendant's infringement has damaged and continues to damage and injure Wonderfold. The injury to Wonderfold is irreparable and will continue unless and until Defendant is enjoined from further infringement.

71.    Wonderfold is entitled to a complete accounting of all revenue and profits derived by Defendant from the unlawful conduct alleged herein, including without limitation, Defendant's total profit pursuant to 35 U.S.C. § 289.

72.    Defendant has engaged and is in willful and deliberate infringement of the '588 patent and the '301 patent. Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of attorney's fees pursuant to 35 U.S.C. § 285.

73.    Wonderfold is entitled to damages and a permanent injunction preventing Defendant from further infringement of the '301 patent.

## COUNT 3: INFRINGEMENT OF TRADEMARK DESIGN-TRADE DRESS/UNFAIR COMPETITION – LANHAM ACT

74.    Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.Wonderfold's strollers

have acquired distinction and secondary meaning in the marketplace that is not functional.

75.     Wonderfold's promotion of its strollers have resulted in Wonderfold acquiring significant goodwill and legally protected rights in the trademark design in the stroller of Wonderfold and/or Wonderfold stroller's trade dress.

76.     As described above, Defendant's, manufacture, market, and/or sell strollers that are substantially or confusingly similar to the Wonderfold strollers, incorporating the two side-by-side vertical rectangle-shaped designs on the left and right side of the stroller separated by a thin solid upright rectangle design, see through paneling on the vertical rectangle-shaped designs on the left and right side of the stroller, a flap with a vertical rectangular shape with rounded corners on the lower portion of the flap that hangs over the side of the stroller, a design with three panels of vertical rectangles with the outer two vertical rectangles in see through material and the middle pattern in solid fabric on the lower portion of a removable basket on the back of the stroller, a crescent shaped flap over the front pocket of the stroller, an overhead canopy with distinctive rounded edges, a distinctive three-ridge design on the clips for accessories, a distinctive shape when the stroller is folded and with the center flap with a distinctive rectangular design positioned to hang over the edge of the uppermost portion of the stroller, a distinctive shape of the side view of a diamond ring on the fastener clip for the five point harness of the child safety belt, and a distinctive design containing a multiplicity of interconnecting boat-shapes on the tread of the wheels, two distinctive curves near the insertion point on the folding latch, handlebar button where the outer facing cover over the button is shaped in a distinctive square where the lines of the square curve outward and the button is on the inside of the handlebar.

77.    Pursuant to 15 U.S.C. § 1125(a), a non-registered trademark owner may be granted injunctive relief to prevent or restrain infringement of its well-known mark and may also seek an award of damages, disgorgement of profits, and attorney's fees as a result of trademark infringement.

78.    Defendant's actions, including their use in commerce of marks and trade dress that are substantially similar or identical to Wonderfold's mark and trade dress, has caused or is likely to cause confusion, mistake, deception of consumers, or misunderstanding as to the source, origin, approval or sponsorship of Defendant's goods.

79.    Defendant's actions, therefore, constitute trademark/trade dress and unfair competition in violation of the Lanham Act, § 1125(a).

80.    Defendant knew of Wonderfold's trademark/trade dress prior to marketing and selling the infringing Cochildor stroller. Accordingly, Defendant's conduct is intentional and willful.

81.    Defendant continues to use confusingly similar marks and trade dress in commerce. Upon information and belief, Defendant is willfully offering for sale and selling products that infringe upon Wonderfold's mark and trade dress in order to benefit from Wonderfold's goodwill and reputation, and to falsely create an association between Defendant's and Wonderfold's products.

82.    Wonderfold has been and will continue to be irreparably harmed and injured by Defendant's actions, and Wonderfold lack an adequate remedy at law. Defendant therefore should be enjoined from using Wonderfold's mark and trade dress.

83.    Wonderfold is also entitled to recover Defendant's profits in providing its goods using Wonderfold's mark and trade dress, as well as all other damages sustained by Wonderfold due to Defendant's use of goods using marks

and trade dress identical or confusingly similar to Wonderfold's mark and trade dress, and costs of suit.

84.    Because this is an exceptional case, involving willful misconduct by Defendant, Wonderfold is entitled to recover treble damages or Defendant's profits, whichever is greater, and reasonable attorney's fees.

## **COUNT 4: UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200, et seq.**

85.    Wonderfold repeats and realleges the foregoing allegations as if set forth in full herein.

86.    As described herein, the actions of Defendant constitutes unlawful business practices under California Business & Professions Code 17200, et seq.

87.    Wonderfold has a valid and legally protectible right in the Wonderfold stroller, whose trade dress is inherently distinctive and through Wonderfold's continuous use and efforts has become associated with Wonderfold.

88.    The above-described acts further constitute business acts that violate 15 U.S.C. § 1125(a) and 35 U.S.C. § 271, and are therefore unlawful.

89.    Furthermore, the above-described acts and practices by Defendant has and is likely to continue to confuse, mislead or deceive the general public and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§ 17200, et seq.

90.    As a direct and proximate result of Defendant's wrongful conduct, Wonderfold has suffered actual injury and has lost money and profits, as well as suffered injury to its reputation and goodwill.

91.    Such harm will continue unless Defendant's acts are enjoined by the Court. Wonderfold has no adequate remedy at law.  Defendant, therefore, should be enjoined from continuing the practices described above.

## **COUNT 5: COMMON LAW UNFAIR COMPETITION**

92.    Wonderfold repeats and realleges the foregoing allegations as if set forth in full herein.

93.    Wonderfold's mark, trade dress and the patented design of products associated therewith have been highly successful and Wonderfold has developed a substantial reputation and goodwill in the marketplace.

94.    Upon information and belief, Defendant has misappropriated Wonderfold's efforts and have exploited Wonderfold's mark, trade dress, and the patented design of products associated therewith, as well as Wonderfold's goodwill and reputation.

95.    The above-described actions constitute unfair competition.

96.    As a direct and proximate result of Defendant's wrongful conduct, Wonderfold has and will continue to be damaged.

97.    Such harm will continue unless Defendant's acts are enjoined by the Court. Wonderfold has no adequate remedy at law.  Defendant, therefore, should be enjoined from continuing the practices described above.

98.    Upon information and belief, Defendant has acted willfully, intentionally and maliciously, such that Wonderfold is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Wonderfold respectfully requests:

A.    That judgment be entered in favor of Wonderfold on its claim that Defendant has infringed the '301 patent, directly, and indirectly, literally or under the doctrine of equivalents;

B.    That judgment be entered in favor of Wonderfold on its claim that Defendant has committed trade dress infringement and unfair competition under the Lanham Act.

COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

C.     That judgment be entered in favor of Wonderfold on its claim that Defendant has committed unfair competition or business practices under California Business & Professions Act § 1700, et seq.

D.     That judgment be entered in favor of Wonderfold on its claim that Defendant has committed common law unfair competition.

E.     Entering judgment that Defendant account for and pay to Wonderfold all damages to and costs incurred because of Defendant's infringing activities and other conduct complained of herein.

F.     That, in accordance with 35 U.S.C. § 283, Defendant and all affiliates, employees, agents, officers, directors, attorneys, successors and assigns, and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from:

1.     making, importing, using, selling, and offering to sell infringing products practicing the '301 patent and from otherwise infringing, contributing to infringement, and actively inducing infringement of the '301 patent;

2.     making, importing, using, selling, and offering to sell products infringing upon Wonderfold's mark or trade dress, or otherwise unfairly competing with Wonderfold, or, in the alternative, awarding Wonderfold post-judgment royalties for future infringement or unfair competition.

3.     holding out in any manner whatsoever that Defendant or Defendant's products or services such as the Cochildor strollers, are in any way sponsored, approved, sourced, certified, affiliated, connected, or associated with Wonderfold, or Wonderfold's products and services; and

4.     making, importing, using, selling, and offering to sell the Cochildor stroller;

COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

G.     A judgment and order that Defendant deliver to Wonderfold for destruction all Cochildor strollers, molds, sales literature, customer literature, and other trade pieces used in the infringement of the '301 patent, and/or the Wonderfold mark and/or trade dress;

H.     A judgment and order that Defendant make an accounting to Wonderfold and pay over to Wonderfold:

1.     the extent of Defendant's total profit and revenue realized and derived from its infringement of the oc'301 patent, and/or Wonderfold's mark and/or trade dress, and actual damage to Wonderfold in an amount not less than a reasonable royalty for Defendant's infringement;

I.     An award of damages sufficient to compensate Wonderfold for Defendant's infringement under 35 U.S.C. § 284, and the Lanham Act;

J.     Awarding Wonderfold actual damages, in an amount to be proven at trial, and in no event less than a reasonable royalty.

K.     Awarding treble damages, as allowed by law.

L.     Awarding punitive damages, as allowed by law.

M.     That the case be found exceptional under 35 U.S.C. § 285 and that Wonderfold be awarded its attorney's fees;

N.     Costs and expenses in this action;

O.     An award of prejudgment and post-judgment interest; and

P.     Such other and further relief as the Court may deem just and proper.

1

## **DEMAND FOR JURY TRIAL**

2      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

3  Wonderfold respectfully demands a trial by jury on all issues triable by jury.

4

5

6  DATED: November 19, 2025          LAW OFFICES OF NIRIA M. ARVIZU

7

8

9                                   By__/ Niria M. Arvizu /_____

10                                  Niria M. Arvizu
                                    Attorney for Plaintiff,
11                                  WONDERFOLD CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28